UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

BILLIE CURRY,

                Plaintiff,

   -v-                                                              1:12-CV-1673

HUNTINGTON COPPER, LLC;
HUNTINGTON COPPER, MOODY,
MAGUIRE; HCMM, INC.; PATRICK
MAGUIRE, Individually; DAVID PINEDA,
Individually; ROBERT POPKEY, Individually;
and JOHN MORRIS, Individually,

                Defendants.

--------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEVINE & BLIT, PLLC<br>Attorneys for Plaintiff<br>499 South Warren Street, Suite 500B<br>Syracuse, NY 13202 | LEWIS G. SPICER, ESQ. |
| COOPER & ELLIOTT, LLC<br>Attorneys for Defendants HCMM, Inc. and<br>   Patrick Maguire<br>2175 Riverside Drive<br>Columbus, OH 43221 | REX H. ELLIOTT, ESQ. |
| DAVID PINEDA, pro se<br>11555 Heron Bay Boulevard, Suite 200<br>Coral Springs, FL 33076 | |
| WOJTAN, VALLONE & MELIN, P.C.<br>Attorneys for Defendant John Morris<br>2956 Union Road<br>Cheektowaga, NY 14227 | GARY J. WOJTAN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Billie Curry ("plaintiff" or "Curry") filed this action on November 9, 2012, against defendants Huntington Copper, LLC ("the LLC"); Huntington Copper, Moody, Maguire[1]; HCMM, Inc.; Patrick Maguire; David Pineda; Robert Popkey; and John Morris (collectively "defendants") alleging sex discrimination and retaliation. She specifically asserts the following nine causes of action: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) sex discrimination in violation of New York Human Rights Law ("NYHRL"); (3) retaliation in violation of Title VII; (4) retaliation in violation of NYHRL; (5) a violation of the federal Equal Pay Act of 1963; (6) a violation of the New York Equal Pay Act; (7) a violation of the Fair Labor Standards Act of 1938 ("FLSA"); (8) a violation of New York Labor Law ("NYLL"); and (9) intentional infliction of emotional distress.[2]

On March 18, 2013, Pineda filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). He argues that personal jurisdiction is lacking and, in the alternative, Curry fails to state any plausible claims against him. The motion has been fully briefed and was considered on submit without oral argument.

## II. FACTUAL BACKGROUND

The following facts, taken from the complaint, are assumed true for purposes of the motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). During the relevant time period Curry was a resident of Rensselaer County, New York. The

---

[1] Plaintiff has not served this defendant and believes it is the same entity as HCMM, Inc.

[2] All causes of action, except the Title VII claims, are asserted against all defendants. The Title VII claims are only brought against the business entities—the LLC; Huntington Copper, Moody, Maguire; and HCMM, Inc.

LLC was a North Carolina company based in Ohio and licensed to do business in various states, including New York. Maguire, Popkey, and Pineda—a Florida resident—all had ownership interests in and operational control over the LLC.

On January 11, 2011, Curry began working as a Regional Vice President ("RVP") for the LLC. This position required her to develop and secure new clients, and she was compensated on a commission-only basis. Her direct supervisor was Morris, who oversaw numerous RVPs and reported to the owners. Morris's performance reports impacted the RVPs' future assignments. Positive reviews would result in more valuable assignments and, in turn, higher commissions. Plaintiff claims Morris consistently gave female RVPs lower performance ratings than male RVPs, despite equivalent job performance. Male RVPs were also given more favorable compensation agreements and higher weekly bonuses than female RVPs. Further, female RVPs were often assigned to geographic areas where male RVPs had already made a sale, thus reducing their ability to earn a commission.

In June 2011 Curry was required to attend a training session, during which her compensation and commission rates were reduced. Male RVPs' rates were not similarly reduced. Around this time period plaintiff complained to Morris about the difference in compensation paid to female and male RVPs.

On July 20, 2011, Steve Diduch was hired to work for the LLC. Diduch was given Curry's personal contact information despite the fact that he had threatened, harassed, and stalked her in the past. Diduch reportedly continued his harassment by contacting plaintiff shortly after receiving her personal information from defendants. Plaintiff immediately complained to Morris, Pineda, and Popkey. These defendants dismissed her concerns as a mere "personal conflict" and failed to take any corrective action.

On November 9, 2011, Morris, Popkey, and Pineda took measures to prevent Curry from accessing the LLC's electronic database and refused to respond to her repeated phone calls and emails. These actions prevented her from working for over a week. Her employment with the LLC was terminated on November 21, 2011. She has not received the commissions and expenses that she was owed at the time of her termination.[3]

### III. DISCUSSION

Pineda argues that Curry has failed to establish the existence of personal jurisdiction over him in the Northern District of New York. In the alternative, he maintains that she has failed to adequately state any plausible claims against him.

#### A. Rule 12(b)(2)—Personal Jurisdiction

Pineda asserts that, as a Florida resident, he does not have sufficient minimum contacts with New York to justify the exercise of personal jurisdiction over him in this state. He further argues that requiring him to travel to and litigate this action in New York would be unreasonable and unduly burdensome. Curry maintains that Pineda is subject to personal jurisdiction under New York's long-arm statute, specifically section 302(a) subsections (1) and/or (3) of the Civil Practice Law and Rules ("CPLR").

Federal Rule of Civil Procedure 12(b)(2) provides that an action may be dismissed for lack of personal jurisdiction. To overcome a motion to dismiss for lack of personal jurisdiction, a "plaintiff need make only a prima facie showing of jurisdiction." Marine Midland Bank N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). When deciding such a motion, a court

---

[3] In the complaint, Curry also alleges that she participated in "an EEOC and/or Unemployment hearing" related to another female RVP. Compl. ¶ 32. However, it is unclear when this hearing occurred or what plaintiff's involvement entailed.

may consider "submitted affidavits and other supporting materials submitted in relation to the motion." Phillips v. Reed Grp., Ltd., __ F. Supp. 2d __, 2013 WL 3340293, at *16 (S.D.N.Y. 2013).

To determine whether personal jurisdiction exists over a non-domiciliary, a federal district court must apply the law of the forum state. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010). If state law permits personal jurisdiction, the court must then determine whether the exercise of such jurisdiction comports with traditional notions of due process. Id. at 164. This due process analysis incorporates two inquiries: (1) whether the defendant had "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction"; and (2) whether it is reasonable to exercise jurisdiction in light of the particular circumstances of the case. Id. When considering the reasonableness aspect, a court may evaluate the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, interstate judicial economy, and the shared interest of "furthering fundamental substantive social policies." Id.

As relevant here, New York's long-arm statute permits the exercise of personal jurisdiction over a non-domiciliary if he, or his agent, transacts business in New York and the claims against him arise out of that business activity. N.Y. C.P.L.R. § 302(a)(1); Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (2007) (internal quotation marks and alterations omitted). The term "agent" is broadly interpreted in this context. Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc., __ F.R.D. __, 2013 WL 5880587, at *6 (E.D.N.Y.

2013). To establish an agency relationship, "defendant's agent must have transacted business in New York for the benefit of and with the knowledge and consent of the defendant and the defendant must have exercised some control over the agent in the matter." Id. (internal quotation marks and alterations omitted).

Pineda concedes that he was an owner of the LLC, which was licensed to transact business in New York, employed several New York residents, and solicited business in the state. Curry alleges that Pineda maintained daily control over essential functions of the LLC, including her employment activities. Such ordinary acts of the owner of a corporation do not, without more, justify the exercise of personal jurisdiction over a non-resident. See Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008) (assuming personal jurisdiction exists over the defendant corporation, it does not necessarily follow that personal jurisdiction also exists over the corporation's president and CEO); Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148–49 (S.D.N.Y. 1995) (requiring plaintiff to show that the defendant president "personally took part in the activities giving rise to the action," not merely that he "likely possessed" the authority to direct those activities).

However, there is more in this case. Curry alleges that, in retaliation for her complaints of unequal pay and sex discrimination, defendants hired Steve Diduch and gave him her personal contact information. She specifically alleges that Pineda was involved in Diduch's hiring and the subsequent refusal to address his continued harassment. Pineda has submitted a copy of a July 29, 2011, email he sent to plaintiff. This email was in response to plaintiff's complaints about Diduch and her allegations of an "unsafe workplace."

See Pineda Aff., Ex. C, ECF No. 16, 20.[4] Curry was an employee of the LLC and a New York resident at the time of this email exchange. Pineda's email to Curry shows he was directly involved in these matters, which form the basis for several of her claims in this case. By performing such a direct managerial task, Pineda became a primary actor in the allegedly injurious conduct. See Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323–24 (S.D.N.Y. 1998) (Sotomayer, J.).

Pineda was also indirectly involved, through his employee and agent, Morris, in business transactions that were allegedly discriminatory and occurred in New York. Morris—Curry's direct supervisor—reported to Pineda and the other owners. The information from Morris's reports dictated whether plaintiff received more lucrative business assignments in New York. Plaintiff alleges that Morris gave better reviews to male RVPs despite the fact that female RVPs completed equivalent work. Plaintiff's claims of sex discrimination and unequal pay arise from these factual allegations.

The emails submitted by Pineda suggest Morris communicated directly with Pineda about some of the specific business transactions that form the basis of plaintiff's discrimination claims. For example, in July 2011 Curry complained that defendants had contacted her clients to check the quality of her work. She claimed that no other RVPs were subjected to similar checks. In a July 25, 2011, email to Pineda and Popkey, Curry wrote: "John Morris left me a message after you spoke with him (David)" about the quality check complaint. Pineda Aff., Ex. C, ECF No. 16, 21. Based on these communications it is reasonable to infer, at this early stage of the litigation, that Pineda exercised at least some

---

[4] The pagination corresponds to the page numbers as assigned on CM/ECF. This convention will be used throughout the order for citations to exhibits.

control over Morris's interaction with Curry in regard to the allegedly discriminatory business practices. In short, Curry has alleged sufficient factual allegations to establish personal jurisdiction over Pineda pursuant to New York's long-arm statute, CPLR § 302(a)(1).[5]

The exercise of such jurisdiction over Pineda comports with traditional notions of due process. As a part owner of a corporation that is licensed to do business in over forty states, and through his direct contacts with Curry, one of his RVPs in New York, Pineda has purposely availed himself to the benefits of transacting business in this state. It is thus fair and reasonable for him to be haled into court here to defend against claims arising from those contacts and business transactions. Although Pineda may be burdened by traveling to New York in the event of a trial, this consideration is outweighed by Curry's interest in obtaining full relief in one action, which also promotes interstate judicial economy. Further, the interests of the forum state are high as Curry is a resident of New York who alleges to have been discriminated and retaliated against while transacting business within this state.

Accordingly, Pineda's motion to dismiss for lack of personal jurisdiction will be denied.

**B. Rule 12(b)(6)—Failure to State a Claim**

Pineda next argues that Curry makes only conclusory allegations against him. He also claims that he could not possibly have retaliated against her after November 3, 2011, when he was allegedly unlawfully terminated by the LLC.

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S.

---

[5] Personal jurisdiction is established under CPLR § 302(a)(3) as well. Accepting the allegations in the complaint, Pineda's tortious conduct outside the state (i.e. the hiring of Diduch and subsequent refusal to take plaintiff's unsafe working environment complaints seriously) caused harm within the state (i.e. Curry's emotional harm caused by Diduch's continued harassment). See Rylott–Rooney v. Alitalia–Linee Aeree Italiane–Societa Per Azioni, 549 F. Supp. 2d 549, 553–54 (S.D.N.Y. 2008).

544, 555 (2007). Although a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where a party has failed to provide some basis for the allegations that support the elements of its claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the pleader's favor. Chambers, 282 F.3d at 152. Finally, a district court may consider documents attached to the pleading as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Pineda asserts Curry has failed to put forth "documentary evidence" to support her allegations. Def.'s Mem. Supp. Dismiss, ECF No. 16, 5. However, at this early stage of the litigation, plaintiff need not provide such evidence.[6] As explained above, she must only plead sufficient factual allegations to support the elements of her claims against Pineda. See Twombly, 550 U.S. at 570.

Curry asserts the following claims against Pineda: sex discrimination and retaliation pursuant to NYHRL; violations of the federal and state Equal Pay Acts; unpaid wages under

---

[6] In his reply brief, Pineda outlines various challenges to the merits of Curry's claims (i.e. he did not actually supervise her department, he did not retaliate against her by hiring Diduch and providing him with her contact information, he responded appropriately to her complaints of an unsafe working environment, and plaintiff was paid the same commission rates as male RVPs). This is premature. At the motion to dismiss stage of the litigation, only the sufficiency of the pleadings is pertinent. Whether Curry can ultimately prove her claims remains to be seen.

- 9 -

the federal FLSA and state NYLL; and intentional infliction of emotional distress. Viewing the allegations in the light most favorable to plaintiff, and making all reasonable inferences in her favor, she has adequately pleaded all of her claims.

### 1. Sex Discrimination

To adequately state a claim of sex discrimination under NYHRL, a plaintiff must allege that: "(1) [she] belonged to a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted).

In her complaint, Curry specifically alleges that she is a woman, was qualified to hold the position of RVP, and received unequal pay, was harassed by Diduch, and was ultimately fired. She further alleges that male RVPs received better performance evaluations, more lucrative assignments, higher pay, and were not harassed or terminated. Pineda is implicated in this claim through his involvement in the hiring of Diduch and the discriminatory pay policies, which were reportedly implemented by Morris at the behest of the LLC's owners. In short, plaintiff has sufficiently pleaded her NYHRL sex discrimination claim.

### 2. Retaliation

To adequately state a retaliation claim under NYHRL, a plaintiff must allege that: (1) she was engaged in protected activity; (2) the defendant was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Borrero v. Am. Express Bank Ltd., 533 F. Supp. 2d 429, 440 (S.D.N.Y. 2008).

Curry complained to Morris about unequal pay and harassment and participated in a coworker's EEOC proceeding. Shortly thereafter, defendants hired Diduch, gave him plaintiff's personal contact information, and then did nothing to stop Diduch's continued harassment. She was also prevented from accessing the company's database and was eventually terminated.[7] Curry has sufficiently pleaded her NYHRL retaliation claim.

### 3. Unequal Pay

To state a prima facie claim under the Equal Pay Act, Curry must allege that: (1) the LLC paid different wages to employees of the opposite sex; (2) the employees performed equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs were performed under similar working conditions. Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).[8]

Curry alleges that female RVPs performed the same work as male RVPs and were evaluated by the same person, Morris, who reported directly to the owners of the LLC. She also claims that despite the equal working conditions and performance, female RVPs received lesser pay and poorer evaluations. Her claims of unequal pay are thus adequately pleaded.

---

[7] Pineda's assertion that he cannot be held responsible for any adverse employment actions suffered by Curry after his November 3, 2011, termination is, again, premature. Discovery may indeed show that he had no involvement in the adverse actions allegedly taken against plaintiff on November 9 and November 21, 2011. At this early stage of the litigation, however, plaintiff has sufficiently alleged his involvement in some of the alleged retaliation; to wit, the hiring of and harassment by Diduch. She specifically alleges that Diduch was hired and provided with her personal contact information in an effort to retaliate against her for her complaints of discriminatory practices. She further alleges that she immediately complained to Pineda and advised him of the history between her and Diduch. In response, Pineda reportedly dismissed her concerns as mere personal matters unrelated to her employment.

[8] Plaintiff's claim under the New York Equal Pay Act is analyzed under the same standard as the federal Equal Pay Act. Pfeiffer v. Lewis Cnty., 308 F. Supp. 2d 88, 98 n.8 (N.D.N.Y. 2004) (McAvoy, S.J.).

### 4. **Unpaid Wages**

As Curry notes in her memorandum of law, to state a prima facie claim for unpaid wages, she must allege: (1) an employer–employee relationship between her and Pineda; (2) work involving interstate activity; and (3) the number of hours worked and the amount of unpaid wages. Zhong v. August August Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). Where, as here, an employee is paid on a commission-only basis, she must nonetheless be paid at least the minimum wage rate for hours worked. Flick v. Am. Fin. Res., Inc., 907 F. Supp. 2d 274, 278 (E.D.N.Y. 2012); see also Hamerslough v. Hipple, No. 10 Civ. 3056, 2012 WL 5290318, at *6 (S.D.N.Y. Oct. 25, 2012) (the FLSA and NYLL "simply require every employer to pay its employees compensation at least equivalent to [minimum wage] an hour, regardless of whether that compensation takes the form of commission-only salary or hourly wages"). "An employee who sues for unpaid minimum wages or overtime compensation has the burden of proving that the employer did not compensate [her] for completed work." Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003).

Curry properly alleges an employment relationship and work impacting interstate commerce. She also provides sufficient information from which to infer the amount of compensation she is due. She alleges that she "performed work as an employee of Defendants from January 11, 2011 until November 21, 2011." Compl. ¶¶ 33, 74, 79. She also claims that, during the June 2011 training session, her compensation was reduced "to either three hundred dollars ($300.00) or two percent (2%) of the fees for completed jobs." Id. ¶ 24. This provides defendants with enough notice to consult their records and reasonably estimate the amount of unpaid wages or commissions. See Zhong, 498 F. Supp. 2d at 629–30 (although plaintiff did not plead the specific amount of outstanding unpaid

minimum wages, the complaint contained enough information from which to calculate the alleged damages).

### 5. Intentional Infliction of Emotional Distress

Finally, to state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (internal quotation marks omitted).

Curry alleges that Pineda and the other owners knew Diduch had harassed, threatened, and stalked her in the past. She further alleges that they specifically hired him, gave him her personal contact information, and refused to take corrective action after he continued his campaign of harassment—all in an effort to retaliate against her for her complaints of unequal pay and discrimination. Diduch's harassment reportedly caused plaintiff to suffer "severe and lasting emotional distress, mental anguish, depression, fear for her safety and the safety of her children, humiliation, and embarrassment." Compl. ¶ 87. Accepting these allegations as true, Curry adequately states this claim.

## IV. CONCLUSION

Pineda had sufficient contacts with New York through his, and his agent's, business transactions within the state. These transactions gave rise to the claims in this action and establish personal jurisdiction over Pineda pursuant to New York's long-arm statute. The exercise of such jurisdiction is reasonable given the circumstances of this case. Moreover, Curry has adequately pleaded all of her claims.

Therefore, it is

ORDERED that

1. Defendant David Pineda's motion to dismiss (ECF No. 16) is DENIED in its entirety; and

2. Defendant Pineda shall file an answer to the complaint on or before January 14, 2014.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 24, 2013
      Utica, New York.